# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T JASON NOYE, individually and on behalf of all others similarly situated, | : : : : | |
| | : | Case No. 15- |
| Plaintiff, | : : | |
| v. | : : | CLASS ACTION |
| JOHNSON & JOHNSON and KELLY SERVICES, INC., | : : : : | |
| | : | Jury Trial Demanded |
| Defendants. | : | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff T Jason Noye, on behalf of himself and all others similarly situated, and files this Class Action Complaint against Johnson & Johnson and Kelly Services, Inc. Plaintiff alleges, based on personal knowledge as to Defendants' actions and upon information and belief as to all other matters, as follows:

### I.  NATURE OF THE CASE

1. Plaintiff brings this action against Defendants for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x.

2. Defendant Johnson & Johnson ("J&J") is an international company in the business of marketing and selling consumer healthcare products, medical devices and pharmaceuticals, through its more than 250 companies located in 60 countries. *See* http://www.jnj.com/about-jnj/company-structure.

3. J&J staffs these services with consumers like Plaintiff through recruitment and hiring services provided by Defendant Kelly Services, Inc. ("Kelly"), a worldwide temporary employment staffing company. *See* http://www.kellyservices.com/Global/home/.

4. As part of its hiring process, J&J and Kelly use criminal background reports generated by nationwide consumer reporting agencies ("CRAs"), to make employment decisions. Among the CRAs utilized by Defendants for this purpose are Verifications, Inc. and Yale Associates, Inc. ("Yale"). Because such employment decisions are based in whole or in part on the contents of the criminal background reports, J&J and Kelly are obliged to adhere to certain important provisions of the FCRA.

5. When obtaining permission from job applicants to screen or check out their backgrounds, J&J and Kelly are required by the FCRA to first disclose in writing to the consumer, "in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2).

6. Plaintiff contends that Defendant Kelly systematically violates section 1681b(b)(2) of the FCRA by procuring and using consumer reports for employment purposes without first disclosing in writing to the consumer, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes. The job applicants were required to sign a form Background Screening Notice, Disclosure, and Authorization ("Disclosure Form") that was not the stand-alone document required by the FCRA and that required the applicants to, among other things, authorize the procurement of a consumer report "at any time, and any number of times, as Kelly in its sole discretion determines is necessary before, during or after my employment, until I revoke this authorization in writing."

7. When using criminal background reports for employment purposes, J&J and Kelly must, *before* declining, withdrawing, or terminating employment based in whole or in part on the

contents of the report, provide job applicants like Plaintiff with a copy of their respective reports and a written summary of their rights under the FCRA.  15 U.S.C. § 1681b(b)(3).

8. Plaintiff contends that Defendants systematically violate section 1681b(b)(3) of the FCRA by using consumer reports to make adverse employment decisions without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA, effectively leaving the person who is the subject of the report without any opportunity to correct any errors on the report or to even know who prepared the background report about him or her which formed a basis for the adverse action.

9. Providing a copy of the criminal background report, as well as a statement of consumer rights before making a final adverse employment decision, arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading criminal background reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer makes an employment decision.

10. To complete this process as to Plaintiff Noye, J&J and Kelly hired Yale, a CRA which operates in many instances as both the consumer reporting agency generating the background check as well as the agent of the employer to execute all decisions based on the information contained therein.  Further, Yale even goes so far as to compare the background reports it generates against hiring criteria provided to it by J&J and Kelly, adjudicating those individuals as fit for employment.

11. Plaintiff brings nationwide class claims against J&J and Kelly under 15 U.S.C. § 1681b(b)(3) because they failed to provide Plaintiff with a copy of the criminal background report

that was used to deny his employment and a summary of his rights under the FCRA before taking adverse action against him. Plaintiff also brings a nationwide class claim against Defendant Kelly because it used and relied upon the non-compliant Disclosure Form and/or otherwise failed to properly obtain Mr. Noye's authorization and consent prior to procuring his background report.

## II. PARTIES

12. Plaintiff T Jason Noye is a "consumer" as protected and governed by the FCRA.

13. Defendant J&J is incorporated under the laws of New Jersey doing business under the laws of the Commonwealth of Pennsylvania and markets its services throughout the United States, including within this District.

14. Defendant Kelly has offices located at 3 Montage Mountain Road, Suite 4, Moosic, Pennsylvania, 18507.

## III. JURISDICTION AND VENUE

15. The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

16. Venue is proper in this Court because J&J and Kelly can be found in this District. 28 U.S.C. § 1391(b)(3). Defendants regularly sell their products and services in this District.

## IV. FACTUAL ALLEGATIONS

**A. Plaintiff's Application For Employment With J&J**

17. Plaintiff T Jason Noye applied for a position as an Operations Supervisor with J&J through Kelly in or around February of 2015. On February 11, 2015, Plaintiff was formally offered the job in writing, which he also accepted in writing that same day.

18. On February 13, 2015, Plaintiff was presented with and signed the Disclosure Form.

19. The Disclosure Form was in the name of Defendant Kelly. On information and belief, Defendant J&J relies upon Kelly's use of the Disclosure Form to obtain background reports on applicants for employment with J&J.

20. The standardized Disclosure Form that Kelly required Mr. Noye to sign was not the "clear and conspicuous disclosure . . . in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" as required by section 1681b(b)(2)(A)(i) of the FCRA.

21. Instead, the Disclosure Form unlawfully included the following improper and extraneous language that distracts the consumer from the purpose of the stand-alone disclosure which is simply to inform the consumer "that a consumer report may be obtained for employment purposes." The extraneous and distracting language in the Disclosure Form includes the following:

- Defendants use the Disclosure Form to ostensibly obtain permission to procure consumer reports "at any time, and any number of times, as Kelly in its sole discretion determines is necessary before, during or after my employment, until I revoke this authorization in writing." There is no authority in the FCRA permitting employers to obtain such unlimited, blanket authorizations for procuring consumer reports, and certainly not after the consumer's employment with Defendants has terminated.

- Defendants use the Disclosure Form to obtain permission to acquire "written or oral information from any business, professional or personal associates or neighbors, including your co-workers and any references you listed on your application or resume."

- The Disclosure Form includes paragraphs of extraneous state-specific information.

- The Disclosure Form requires the consumer to agree that "Kelly will notify me if a consumer reporting agency other than Verifications, Inc. is used to obtain a consumer report."

22. Many courts have held that such extraneous language and restrictions violate the

5

stand-alone requirement. *See also Martin v. Fair Collections & Outsourcing, Inc.*, 2015 WL 4064970, *4 (D. Md. June 30, 2015) (holding that plaintiff stated a claim for willful violation of section 1681b(b)(2) and observing: "Here, in addition to the disclosure that the consumer report would be obtained for employment purposes, FCO's form contains an authorization to obtain the report, information on when the applicant must challenge the accuracy of any report, an acknowledgement that the employee understands that 'all employment decisions are based on legitimate non-discriminatory reasons,' the name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report, and several pieces of state-specific information.").

23. Defendant Kelly knew or should have known that its failure to provide a stand-alone disclosure was a violation of the FCRA because the statutory language of section 1681b(b)(2)(A) was pellucidly clear that Defendants could not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely[1] of the disclosure***, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis supplied).

---

[1] According to the Merriam-Webster online dictionary, the word "solely" is defined as "without anything or anyone else involved;" and "to the exclusion of all else." *See* http://www.merriam-webster.com/dictionary/solely. According to dictionary.com, "solely" means "exclusively or only." *See* http://dictionary.reference.com/browse/solely. These dictionary definitions of the word "solely" leave no doubt that a document disclosing that an employer planned to obtain a consumer report does not "consist[] solely of the disclosure" when the document also contains a release of liability.

6

24. In addition, interpretations of the FCRA by the Federal Trade Commission (FTC) from 1998, seventeen years prior to Defendants' requirement that Mr. Noye sign the form, show that extraneous language in a background authorization or disclosure form violates the FCRA. In response to company inquiries, the FTC issued two opinion letters addressing [section 1681b(b)(2)](#)'s "consists solely" language. The first letter explicitly states that "inclusion of . . . a waiver [of one's FCRA rights] in a disclosure form will violate" [section 1681b(b)(2)](#) because the form will not "consist 'solely' of the disclosure." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998). The second letter stated that the FCRA prohibits disclosure forms "encumbered by any other information ... [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure." Letter from Clarke W. Brinckerhoff, Fed. Trade Comm' n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998).

25. Numerous courts interpreting the FCRA have found FTC opinion letters persuasive. *See, e.g.,* [Owner–Operator Independent Drivers Ass'n, Inc. v. USIS Commercial, 537 F.3d 1184, 1192 (10th Cir. 2008)](#); [Morris v. Equifax Info. Servs., LLC, 457 F.3d 460, 468 (5th Cir. 2006)](#). *See also, Gager v. Dell Financial Services, LLC,* 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

26. The FCRA statutory text, the FTC opinions and case law constitute significant authority existing during the time that Defendants were required to provide stand-alone disclosures.

27. The Disclosure Form that Defendant Kelly provided to Plaintiff violated section 1681b(b)(2) of the FCRA because the document did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).[2] Among other things, the Disclosure Form was deliberately designed by Kelly to extract from Mr. Noye and other applicants their agreement that Kelly could obtain and procure consumer reports on them at any time and for any reason forever in the future regardless of whether the applicant had any ongoing employment relationship with the company. There is no reasonable reading of the statutory language of FCRA section 1681b(b)(2) that would justify the inclusion of such language in an FCRA disclosure or the practice of obtaining and using consumer reports in the manner that Kelly's Disclosure Form provides for.

B. **Defendants' Treatment of Plaintiff's Application For Employment**

28. When Plaintiff filled out the application, Plaintiff indicated that he had been convicted of a crime. After viewing the application, Kelly communicated to Plaintiff, by email on

---

[2] *See Groshek v. Great Lakes Higher Education Corporation*, 2015 WL 7294548 (W.D. Wis. Nov. 16, 2015); *Manuel v. Wells Fargo Bank, N.A.*, 2015 WL 4994538 (E.D. Va. Aug. 19, 2015); *Groshek v. Time Warner Cable, Inc.*, 2015 WL 4620013 (E.D. Wis. July 31, 2015); *Martin v. Fair Collections & Outsourcing, Inc.*, 2015 WL 4064970 (D. Md. June 30, 2015); *Moore v. Rite Aid Hdqtrs Corp.*, 2015 WL 3444227 (E.D. Pa. May 29, 2015); *Lengel v. HomeAdvisor, Inc.*, 2015 WL 208893 (D. Kan. May 6, 2015); *Speer v. Whole Food Market Group, Inc.*, 2015 WL 1456981 (M.D. Fla. March 30, 2015)); *Milbourne v. JRK Residential America, LLC*, 2015 WL 1120284 (E.D. Va. March 10, 2015); *Miller v. Quest Diagnostics*, 2015 WL 545506 (W.D. Mo. Jan. 28, 2015); *Jones v. Halstead Management Company, LLC*, 2015 WL 366244, *5-6 (S.D.N.Y. Jan. 27, 2015); *Avila v. NOW Health Group, Inc.*, 2014 WL 3537825, *2-3 (N.D. Ill. July 17, 2014); *Reardon v. Closetmaid Corporation*, 2013 WL 6231606, *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document.")

February 16, 2015, that it needed additional information, but that the conviction would not necessarily bar him from employment with Kelly and J&J.

29. Plaintiff promptly supplied Kelly with all requested documentation. Plaintiff also repeatedly reached out to Kelly and offered to answer questions or provide additional information throughout the process.

30. As part of its application procedure, Kelly, on behalf of J&J, purchased a consumer report from Yale on Plaintiff.

31. On February 20, 2015 Kelly contacted Plaintiff informing him of the process he should expect leading up to and in the first days of his employment, and that background screening generally takes 3-7 days to be completed. He was also told that his start date would be delayed due to the screening.

32. On March 10, 2015, Kelly informed Plaintiff that he had cleared its screening process but that J&J had its own process that was still under way.

33. On March 13, 2015, Kelly informed Plaintiff that J&J would not be hiring him. This adverse action was based on a background report obtained from Yale.

34. The background report from Yale was inaccurate and misleading. While Plaintiff has one conviction of a misdemeanor on his criminal history, a 2008 conviction for defiant trespass (which is a third degree misdemeanor), Yale misreported four other summary offenses as misdemeanors, and listed three additional purported safety violations, all of which cost Plaintiff his job with J&J.

35. Plaintiff immediately requested a letter explaining the reasoning for rescinding the job offer. After a week went by with no response, Plaintiff again requested that Kelly provide him with the information that was used in the decision process.

36. At no time during any of these communications did Kelly provide Plaintiff with a copy of his Yale report or a statement of his rights under the FCRA, and Plaintiff still has yet to receive the report from Kelly.

37. At no time during any of these communications did J&J provide Plaintiff with a copy of his Yale report or a statement of his rights under the FCRA, and Plaintiff still has yet to receive the report from J&J.

C. **J&J's and Kelly's Practices and Policies**

38. J&J and Kelly have created and implemented national, uniform hiring and staffing policies, procedures, and practices under which they operate. Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees.

39. Under the FCRA, any "person" using a consumer report, such as J&J and Kelly, who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action. 15 U.S.C. § 1681b(b)(3)(A); *see also Miller v. Johnson & Johnson,* 80 F. Supp. 3d 1284, 1289 (M.D. Fla. 2015); *Goode v. LexisNexis Risk & Info. Analytics* 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) (more than one business can be a user of a single background report; "[u]nder the FCRA, 'person' means

any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. § 1681a(b). Thus, defendant is a person and must comply with § 1681b(b)(3)(A).").

40. There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA. The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete." *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

41. A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate, or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

42. Numerous courts interpreting the FCRA have found FTC opinion letters persuasive. *See, e.g., Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537

F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006). *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

43. Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc.*, No. 3:05CV853, 2006 WL 7067107, at *5 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) (quoting *Williams*). In *Reardon v. Closetmaid Corp.*, No. 08-1730, 2011 WL 1628041 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their consumer report at least five days before being notified that the employer might take adverse action.

44. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he or she is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him or her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

45. Defendants typically do not provide job applicants with a copy of their consumer reports or a statement of their FCRA rights before they take adverse action against them based on the information in such reports, despite being required to do so by section 1681b(b)(3)(A) of the FCRA.

46. The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendants failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A).

47. As a result of these FCRA violations, J&J and Kelly are liable to Plaintiff, and to each Class member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

48. Defendants' conduct and omissions were willful. Because the FCRA was enacted in 1970, Defendants have had years to become compliant but have failed to do so.

49. J&J and Kelly were aware of their obligations under the FCRA as they relate to employment because they hired Yale not only to perform its background checks but also to (attempt to) provide J&J's and Kelly's pre-adverse action notices to job applicants. J&J and Kelly therefore knew of the requirements imposed upon them by the FCRA and failed to craft a system that would ensure compliance with those requirements.

## V. CLASS ACTION ALLEGATIONS

50. Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b, Plaintiff brings this action for himself and on behalf of the following Classes:

> (a) All natural persons residing within the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, Defendant Kelly procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the Disclosure Form provided to Mr. Noye and described above (the "Section 1681b(b)(2) Class").

> (b) All employees or applicants for employment with Defendant J&J residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report

procured or caused to be procured from a consumer reporting agency that was used by J&J to make an adverse employment decision regarding such employee or applicant for employment, within five years prior to the filing of this action and extending through the resolution of this case, and for whom J&J failed to provide the applicant a copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action (the "J&J Section 1681b(b)(3) Class").

(c) All employees or applicants for placement through Defendant Kelly residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report procured or caused to be procured from a consumer reporting agency that was used by Kelly to make an adverse employment decision regarding such employee or applicant for employment, within five years prior to the filing of this action and extending through the resolution of this case, and for whom Kelly failed to provide the applicant a copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action (the "Kelly Section 1681b(b)(3) Class").

Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

51. Specifically excluded from the Classes are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Classes; (c) all persons who have previously executed and delivered to J&J releases of all their claims for all of their Class claims; and (d) Defendants' employees, officers, directors, agents, and representatives and their family members.

52. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. At this time, Plaintiff does not know the exact size of the Classes but public filings by J&J and Kelly indicate that they will be in the many thousands. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class members impracticable. The names and addresses of the Class members are identifiable through documents maintained by

Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

53. **Commonality.** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

(a) Whether Defendants Kelly willfully or negligently violated section 1681b(b)(2) of the FCRA by procuring or causing to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes;

(b) Whether Defendants J&J and Kelly failed to provide each applicant for employment a copy of their consumer report before Defendants took adverse action based upon a disqualifying or adversely scored consumer report;

(c) Whether Defendants J&J and Kelly failed to provide each applicant for employment a copy of their written notice of FCRA rights before Defendants took adverse action based upon the consumer report; and,

(d) Whether Defendants J&J and Kelly acted willfully or negligently in disregard of the rights of employment applicants in their failure to permit their employees and automated systems to send employment applicants their full consumer report and a written statement of their FCRA rights before taking adverse action based on the consumer report.

54. **Typicality**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for absent class members.

55. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's counsel have prosecuted complex FCRA class actions across the country.

56. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

57. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the

class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## VI. CAUSES OF ACTION

### COUNT 1

### 15 U.S.C. § 1681b(b)(2)

58. Plaintiff realleges and incorporates by reference all preceding allegations.

59. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

60. The background reports ordered by Defendants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

61. Defendant Kelly is liable for willfully or negligently violating section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

### COUNT 2

### 15 U.S.C. § 1681b(b)(3)(A)

62. Plaintiff incorporates by reference those paragraphs set out above.

63. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

64. The Yale background report ordered by Defendants is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d).

65. The FCRA provides that any person "using a consumer report for employment

purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

66. For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

67. Defendants J&J and Kelly are each a "person" and each regularly uses background reports for employment purposes. 15 U.S.C. § 1681a(b).

68. The FCRA requires Defendants, as users of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. §§ 1681b(b)(3)(A)(i) and (ii).

69. Defendants willfully and negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Classes the following before using such reports: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and (c) a written description of the consumer's rights under the FCRA.

## VII.     **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

A. That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Classes;

B. That judgment be entered in favor of the Section 1681b(b)(2) Class, the J&J Section 1681b(b)(3) Class and the Kelly Section 1681b(b)(3) Class against Defendants for statutory

damages and punitive damages for violation of 15 U.S.C. § 1681b(b)(3), pursuant to 15 U.S.C. § 1681n;

C. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

D. That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

## VIII. TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATED: December 10, 2015

Respectfully submitted,

By: *James A. Francis*
James A. Francis
John Soumilas
David A. Searles
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Marielle Macher
**COMMUNITY JUSTICE PROJECT**
118 Locust Street
Harrisburg, PA 17101
717-236-9486, ext. 214

***Attorneys for Plaintiff***