**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| T JASON NOYE, | : | |
| individually and on behalf | : | |
| of all others similarly situated, | : | No. 1:15-cv-2382 |
|     Plaintiffs | : | |
| | : | (Judge Kane) |
|         v. | : | |
| | : | |
| JOHNSON & JOHNSON and | : | |
| KELLY SERVICES, INC., | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court is Defendant Kelly Services Inc.'s motion to compel arbitration and stay the above-captioned case pending completion of the arbitration.  (Doc. No. 39.)  For the reasons that follow, the Court will deny Defendant's motion to compel arbitration.

## I.     BACKGROUND[1]

In February 2015, Plaintiff T Jason Noye applied for the position of Operations Supervisor with Johnson & Johnson through a staffing company, Kelly Services, Inc. ("Kelly"). (Doc. No. 1 ¶¶ 3, 17.)  Plaintiff was offered and accepted the position on February 11, 2015.  (Id. ¶ 17.)  In his application, Plaintiff indicated that he had been convicted of a crime.  (Id. ¶¶ 28-29.)  Kelly requested information about Plaintiff's conviction, and Plaintiff provided the additional documentation shortly thereafter.  (Id.)

On March 10, 2015, Kelly informed Plaintiff that he had cleared its screening process. (Id. ¶ 32.)  However, Plaintiff alleges that Johnson & Johnson decided not to hire Plaintiff because of a background report Kelly had purchased from Yale Associates, Inc. ("Yale").  (Id. ¶¶

---

[1] These facts are drawn from Plaintiff's complaint (Doc. No. 1), accepted as true for the limited purpose of the present motion only.

4, 30, 32-33.)  Plaintiff claims that the Yale report misreported four summary offenses as misdemeanors and caused him to lose the Johnson & Johnson position.  (Id. ¶ 34.)

On December 11, 2015, Plaintiff T Jason Noye initiated the above-captioned action against Defendants Johnson & Johnson and Kelly.  Plaintiff alleges that Defendants violated the Fair Credit Reporting Act's ("FCRA") disclosure requirements, 15 U.S.C. § 1681b(b)(2) (Doc. No. 1 ¶¶ 5-6, 20, 23, 27, 61), and the requirement to provide applicants with a copy of the report and a description of consumer rights under the FCRA, 15 U.S.C. § 1681b(b)(3)(A) (id. ¶¶ 7-8, 11, 69).  Plaintiff brings suit on behalf of himself and putative class members.  Plaintiff seeks statutory damages, punitive damages, as well as attorneys' fees and costs.  (Id. ¶¶ 47, 50-57.)

On February 22, 2016, Defendant Kelly filed a motion to compel arbitration and stay the case.  (Doc. No. 39.)  Defendant Kelly filed a brief in support of the motion to compel on February 23, 2016 (Doc. No. 42), and Plaintiff filed a brief in opposition on April 11, 2016 (Doc. No. 54).  Defendant Kelly filed a reply brief on May 11, 2016.  (Doc. No. 56.)  The pending motion is ripe for disposition.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides the "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009).  Even in light of the FAA, arbitration is "strictly a matter of contract."  Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999).  "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."  Id.  "Thus, in deciding whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid

agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem., 584 F.3d at 527).

As to the first question, the United States Court of Appeals for the Third Circuit has recently clarified "the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). In effect, to determine whether there is a valid agreement to arbitrate, a district court "must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or 56." Sanford v. Bracewell & Guiliani, LLP, No. 14-1763, 2015 WL 4035614, at *2 (3d Cir. July 2, 2015). The Rule 12(b)(6) standard is appropriate where "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" Guidotti, 716 F.3d at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)); accord Sanford, 2015 WL 4035614, at *2. In such cases, a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Guidotti, 716 F.3d at 772 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

In contrast, the Rule 56 standard is appropriate: (1) where "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) where "the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." Guidotti,

3

716 F.3d at 774; <u>accord</u> <u>Sanford</u>, 2015 WL 4035614, at *2.  In such cases, the district court

should allow limited discovery on the question of arbitrability before "entertaining [the] motion

[to compel arbitration] under a summary judgment standard."  <u>Guidotti</u>, 716 F.3d at 780.

## III.   DISCUSSION

Defendant Kelly argues that Plaintiff signed a "binding agreement to arbitrate all disputes

related to his employment."  (Doc. No. 42 at 8, 10.)  Defendant attached a document titled

Dispute Resolution and Mutual Agreement to Binding Arbitration ("Arbitration Agreement")

and dated February 12, 2015 to the pending motion.  (Doc. No. 39-4 at 7-8.)  Plaintiff responds

that the complaint does not facially establish arbitrability and that Plaintiff never intended to be

bound by an arbitration agreement.  (Doc. No. 54 at 16-17.)  Plaintiff also contends that: (1) the

dispute does not fall within the scope of the Arbitration Agreement; (2) the Arbitration

Agreement is unconscionable and violates the National Labor Relations Act, 29 U.S.C. §§ 151 <u>et</u>

<u>seq.</u>; (3) Plaintiff does not recall executing the Arbitration Agreement; and (4) the Arbitration

Agreement is superseded by a later agreement.  (Doc. No. 54 at 7-8.)

As discussed above, the Court must decide (1) whether the complaint facially establishes

arbitrability; and (2) if so, whether Plaintiff has put forward "reliable evidence that is more than

a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though

on the face of the pleadings it appears that it did."  <u>Guidotti</u>, 716 F.3d at 774.[2]  The Court first

turns to whether arbitrability is apparent on the face of the complaint.  <u>Id.</u>

---

[2] "To determine whether there is a valid agreement to arbitrate between [the parties], we must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or 56 and thus, what materials we may consider."  <u>Sanford v. Bracewell & Guiliani, LLP</u>, 618 F. App'x 114, 117 (3d Cir. 2015).

A.    **Arbitrability on the face of the complaint**

Defendant Kelly argues that the Arbitration Agreement "is integral to Plaintiff's claims and its authenticity cannot be disputed." (Doc. No. 42 at 21, 23). Defendant reasons that (1) "Plaintiff's claims rely on his application for employment and his disclosure form;" and (2) the Arbitration Agreement was among the "materials received in conjunction with his application for employment." (Id. at 22-23.) Plaintiff responds that the complaint does not refer to the purported arbitration agreement. (Doc. No. 54 at 13, 16.)

This Court must determine whether the complaint or documents relied upon in the complaint establish on their face that Plaintiff agreed to the Arbitration Agreement. Guidotti, 716 F.3d at 773-74, 776. Here, the complaint makes no explicit reference to an arbitration agreement, and Plaintiff attached no exhibits to the complaint. (Doc. No. 1; see Doc. No. 54 at 16.) Instead, Defendant Kelly attached the Arbitration Agreement to the motion to compel arbitration. (Doc. No. 39-4 at 7-8.) The Arbitration Agreement includes the "typewritten" signature of "T Noye," dated February 12, 2015, and the handwritten signature of Nina Ramsey, Defendant Kelly's Chief Human Resources Officer, dated February 12, 2015. (Id. at 8.)

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). However, a district court may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Plaintiff does not dispute the authenticity of the Arbitration Agreement. (See Doc. No. 54 at 13-17.) Plaintiff also does not challenge Defendant's argument that Plaintiff's claims are based on his application for employment and, by extension, on the

Arbitration Agreement.  (See Doc. No. 42 at 22-23.)  Instead, Plaintiff argues that the complaint does not reference an arbitration agreement.  (Doc. No. 54 at 13, 17.)

Therefore, absent any dispute over the Arbitration Agreement's authenticity, the Court considers the Arbitration Agreement and finds that arbitrability is facially established.  The Court turns next to whether Plaintiff has put forward evidence "that is more than a naked assertion" that Plaintiff "did not intend to be bound" by the Arbitration Agreement.  Guidotti, 716 F.3d at 774 (internal quotations omitted).

**B.  Assertion that Plaintiff Did "Not Intend to be Bound" to Arbitration Agreement**

Plaintiff argues that he has presented sufficient evidence to warrant the application of the Rule 56 standard.  Specifically, Plaintiff cannot "recall signing the arbitration agreement," cannot verify his signature, challenges why the Arbitration Agreement is signed "with a typewritten version of his name" when Defendant Kelly "had him sign numerous agreements with his handwritten signature," and stresses that he did execute a February 13, 2015 agreement agreeing "to non-binding ADR."  (Doc. No. 54 at 17.)  In essence, Plaintiff contends that he "did not intend to be bound" by the Arbitration Agreement.  (Id.)

At this stage, the Court must determine "whether that evidence is sufficient to move the case beyond the pleadings and warrant the application of the summary judgment standard." Guidotti, 716 F.3d at 777.  This inquiry requires the Court to distinguish between (1) a "mere naked assertion that [Plaintiff] did not intend to be bound by the terms" of an arbitration agreement and (2) a "not insubstantial" amount of evidence in response to the arbitration motion. Guidotti, 716 F.3d at 777, 779 (internal quotations and citations omitted).

For example, in Guidotti, the plaintiff claimed that she had not received the account agreement, which included an arbitration provision, until weeks after signing the special purpose

agreement.  <u>Id.</u> at 778.  In support of her claim, the plaintiff pointed out that the account

agreement lacked the "DocuSign" header line encoded on the special purpose agreement.  <u>Id.</u> at

778-79.  The <u>Guidotti</u> plaintiff argued that any document linked to the special purpose agreement

would, like the special purpose agreement, bear a DocuSign header.  <u>Id.</u> at 779.  The Third

Circuit reasoned that, "even without an affidavit, the evidence concerning the DocuSign headers

is not insubstantial."  <u>Id.</u>  Accordingly, the Third Circuit held that the plaintiff submitted "enough

evidence in response" to the arbitration motion to warrant the summary judgment standard.  <u>Id.</u>

Here, Plaintiff submitted an affidavit in support of his opposition to the arbitration

motion.  (Doc. No. 54-1 at 2-3.)  Plaintiff declares that he signed numerous documents provided

by Defendant Kelly with his handwritten signature, though the Arbitration Agreement contains

only a "typewritten version" of Plaintiff's name.  (<u>Id.</u>)  Plaintiff also submitted a copy of an

employment agreement, signed in Plaintiff's handwriting and dated February 13, 2015, that

required Plaintiff to "use non-binding ADR methods."  (Doc. No. 54-2 at 4-5.)  Upon

consideration of <u>Guidotti</u>, the Court finds that evidence submitted in response to Defendant's

motion is "not insubstantial" and constitutes more than a "naked assertion" that Plaintiff did not

intend to be bound by the Arbitration Agreement.[3]  <u>Guidotti</u>, 716 F.3d at 777, 779.

Accordingly, the Court will deny Defendant's motion to compel arbitration.  The parties

are "entitled to discovery on the question of arbitrability before a court entertains further briefing

on [the] question."[4]  <u>Id.</u>

---

[3] Having considered Plaintiff's unconscionablity arguments (Doc. No. 54 at 22-25), this Court is further guided by the Third Circuit's instruction that "that pre-arbitration discovery may be necessary … when there is an allegation that an arbitration agreement may be unconscionable." <u>Golden Gate Nat. Sr. Care, LLC v. Sulpizio</u>, No. 15-00174, 2015 WL 4878348, at *4 (M.D. Pa. Aug. 14, 2015) (citing <u>Guidotti</u>, 716 F.3d at 774 n. 5.)

[4] The Third Circuit has specified the next steps in addressing the issue of arbitrability: "[A] restricted inquiry into factual issues will be necessary to properly evaluate whether there

IV.    **CONCLUSION**

The Court will deny Defendant's motion to compel arbitration.   An order consistent with this memorandum follows.

---

was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." <u>Guidotti</u>, 716 F.3d at 774 (internal citations and quotations omitted).