IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T JASON NOYE, | : | |
| individually and on behalf | : | |
| of all others similarly situated, | : | No. 1:15-cv-2382 |
|     Plaintiffs | : | |
| | : | (Judge Kane) |
|     v. | : | |
| | : | |
| JOHNSON & JOHNSON, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Johnson & Johnson Services, Inc. ("J&J")'s renewed motion to compel arbitration and dismiss or, in the alternative, stay all proceedings. (Doc. No. 74.) For the reasons that follow, the Court will deny the motion.

## I.    BACKGROUND

Plaintiff T Jason Noye ("Plaintiff"), initiated the above-captioned action against Defendants J&J and Kelly Services, Inc. ("Kelly"), on December 11, 2015, alleging various violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a-1681x.[1] (Doc. No. 1.) On February 22, 2016, Kelly filed a motion to compel arbitration (Doc. No. 39), and J&J filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to compel arbitration or, in the alternative, stay all proceedings (Doc. No. 40). On March 3, 2016, the Court stayed the action pending disposition of both motions. (Doc. No. 48.)

---

[1] The Court summarized the relevant factual background of this action in a Memorandum dated November 6, 2017 (Doc. No. 83), which accompanied an Order granting Defendant Kelly Services, Inc. ("Kelly")'s motion to compel arbitration (Doc. No. 72), and directing the parties to file supplemental briefing addressing the effect of White v. Sunoco on J&J's renewed motion to compel arbitration (Doc. No. 74). Accordingly, the Court incorporates by reference its November 6, 2017 Memorandum, including the underlying factual details recited therein. (Doc. No. 83.)

On September 7, 2016, the Court denied both Defendants' motions without prejudice as to their right to refile the motions after conducting arbitration-related discovery. (Doc. Nos. 61, 62, 63.) The Court then ordered arbitration-related discovery beginning on September 7, 2016 and lasting for sixty (60) days. (Doc. No. 62.) After the arbitration-related discovery period concluded and the parties notified the Court of their disagreement as to the results of the discovery (Doc. No. 70), J&J filed the instant renewed motion to compel arbitration and to dismiss or, alternatively, to stay proceedings on January 30, 2017 (Doc. No. 74). Kelly also filed a renewed motion to compel arbitration on that date. (Doc. No. 72.)

On November 6, 2017, the Court issued a Memorandum and Order granting Kelly's motion to compel arbitration. (Doc. Nos. 83, 84.) As to J&J's motion, the Court ordered the parties "to file additional briefing, specifically addressing the issue of the applicability of the theory of equitable estoppel to the motion in light of the Third Circuit's recently-issued precedential opinion in White v. Sunoco, 870 F.3d 257 (3d Cir. 2017)." In accordance with this Order, J&J filed a supplemental brief in support of its renewed motion on November 20, 2017 (Doc. No. 85), and Plaintiff filed a brief in opposition on December 4, 2017 (Doc. No. 86). On December 22, 2017, J&J filed a reply brief. (Doc. No. 87.) Accordingly, J&J's renewed motion is fully briefed and thus ripe for disposition, and the parties have submitted briefs addressing the applicability of equitable estoppel to J&J's motion following White.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides the "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir.

2009). Even in light of the FAA, arbitration is "strictly a matter of contract." Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Id. "Thus, in deciding whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem., 584 F.3d at 527).

As to the first question, the United States Court of Appeals for the Third Circuit has clarified "the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). In effect, to determine whether there is a valid agreement to arbitrate, a district court "must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or 56." Sanford v. Bracewell & Guiliani, LLP, No. 14-1763, 2015 WL 4035614, at *2 (3d Cir. July 2, 2015). Having already permitted limited discovery on the question of arbitrability, the Court applies the summary judgment standard to J&J's renewed motion to compel arbitration.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

At the summary judgment stage, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). In deciding a motion for summary judgment, the Court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Moreover, the Court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the Court must simply "determine whether there is a genuine issue for trial." Id.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some

4

metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III. DISCUSSION

### A. Equitable Estoppel and Whether a Non-Signatory May Compel Arbitration

A non-signatory to an arbitration agreement may bind a signatory to that agreement in certain circumstances under the theory of equitable estoppel. See, e.g., Dwayne E. Williams, Binding Nonsignatories to Arbitration Agreements, 25-SPG FRANCHISE L.J. 175, 178 (2006) ("Equitable estoppel is typically applied against signatory plaintiffs . . . to compel them to arbitrate claims asserted against defendant nonsignatories to the arbitration agreement."); see also Abrams v. Chesapeake Energy Corp., Nos. 4:16-cv-1343, 4:16-cv-1345, 4:16-cv-1346, 4:16-cv-1347, 2017 WL 6541511, at *8 (M.D. Pa. Dec. 21, 2017) (citing Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014)). "[W]hen a signatory resists arbitration, courts may use equitable estoppel to join a 'willing' nonsignatory to a proceeding where arbitration between the underlying signatory participants is appropriate." Alexandra Anne Hui, Equitable Estoppel and the Compulsion of Arbitration, 60 VAND. L. REV. 711, 728-29 (2007) (quoting David F. Sawrie, Equitable Estoppel and the Outer Boundaries of Federal Arbitration Law: The Alabama Supreme Court's Retrenchment of an Expansive Federal Policy Favoring Arbitration, 51 VAND. L. REV. 721, 736 (1998)). However, within the Third Circuit, the use of equitable estoppel by a non-signatory to compel arbitration is limited to circumstances in which there is a close relationship among the entities involved, as well as a connection between the wrongs allegedly committed by the non-signatory and the non-signatory's obligations and duties under the relevant contract. See id. (citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.A., 269 F.3d 187 (3d Cir. 2001)).

5

1. **Applicable Law on Equitable Estoppel**

    i. **Pennsylvania and Michigan Law**

The Court's choice of law analysis is governed by Pennsylvania choice of law rules, as Pennsylvania is the forum state. See, e.g., LaSala v. Bordier et Cie, 519 F.3d 121, 140 (3d Cir. 2008) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). As noted by the parties in their respective briefs, both Pennsylvania and Michigan– the only states whose laws would be applicable to the Court's analysis of equitable estoppel in this case – permit a non-signatory to compel a signatory to arbitrate claims against it under certain circumstances.[2] (Doc. Nos. 75 at 14, 77 at 8, 85 at 6, 86 at 4, 87 at 2.) Under Pennsylvania law, "non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties," and the claims involved are "inextricably entwined with the [c]ontract." See Elwyn v. DeLuca, 48 A.3d 457, 463 (Pa. 2012) (quoting Dodds v. Pulte Home Corp., 909 A.2d 348, 463 (Pa. Super. Ct. 2006)).

Similarly, Michigan Law recognizes that "a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration" under circumstances in which: (1) "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory;" or (2) "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." See Tobel v. AXA Equitable Live Ins. Co., No. 298129, 2012 WL 555801, at *11 (Mich. Ct. App. Feb. 21, 2012) (citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 528 (5th Cir. 2000)). Because both Pennsylvania and Michigan law on equitable estoppel

---

[2] The parties agree that either Michigan or Pennsylvania law applies, and that the states' laws on equitable estoppel do not conflict with each other. (Doc. Nos. 75 at 14, 76 at 11, 77 at 8.)

ultimately hinge on the relationship or connection between the relevant parties, the Court concludes that no conflict exists and either state's law can be applied to the Court's equitable estoppel analysis.

### ii. Third Circuit's Acknowledgment of Equitable Estoppel in DuPont

In E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., the United States Court of Appeals for the Third Circuit discussed the applicability of equitable estoppel to arbitration agreements, remarking that although the court had not previously "applied an equitable estoppel theory to bind a non-signatory to an arbitration clause[,] there appears to be no reason why, in an appropriate case, [the court] would refrain from doing so." See DuPont, 269 F.3d 187 at 199. DuPont involved a joint venture agreement, which "ultimately failed and DuPont . . . brought suit against [the defendants] to recover . . . not for breach of the [a]greement, to which it was not a party, but rather for breach of an oral agreement and fraudulent misrepresentations." Id. at 191. Thus, the moving defendants were signatories who sought to compel a non-signatory plaintiff to arbitrate. The district court ultimately denied two defendants' motion to compel arbitration, and the Court of Appeals affirmed the denial. Id.

On appeal, the Third Circuit concluded that equitable estoppel was not applicable because "the thrust of the claims . . . are far enough removed from the [a]greement such that [the signatory-plaintiff] should not be equitably estopped from repudiating the arbitration clause contained in the [a]greement." Id. at 202. Although the moving defendants in DuPont were signatories seeking to compel a non-signatory plaintiff to arbitrate, the Court of Appeals also discussed the applicability of equitable estoppel when a non-signatory seeks to compel a signatory to arbitrate claims against it:

7

> [C]ourts have bound a signatory to arbitrate with a non-signatory "at the nonsignatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'"

Id. at 199 (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir. 1995)). Consequently, when examining a motion to compel arbitration by a non-signatory, a court must ascertain: (1) whether there is a sufficiently "close relationship between the entities involved" and (2) the relationship between wrongs alleged by the plaintiff and the non-signatory's contractual obligations. See id. Further, "[t]o satisfy the second part of the test, the non-signatory seeking enforcement of an arbitration agreement must show that the claims against them are 'intimately founded in and intertwined with' the underlying obligations of the contract to which they were not a party." Devon Robotics v. Deviedma, No. 09-cv-3552, 2009 WL 4362822, at *4 (E.D. Pa. Nov. 30, 2009) (quoting DuPont, 269 F.3d at 199).

In addition, the Court notes that the analysis used by the Third Circuit in DuPont has been interpreted as "essentially the same" as the applicable standard under Pennsylvania law. See White, 870 F.3d at 263 n.5 ("The equitable estoppel rule in Pennsylvania is essentially the same as the test described in DuPont . . . ."). Accordingly, the Court concludes that the applicability of equitable estoppel in this case may be evaluated using the analysis articulated in DuPont.

### 2. Application of Equitable Estoppel in White v. Sunoco

Since DuPont, the Third Circuit Court of Appeals has addressed whether a non-signatory can compel a signatory to arbitrate under the theory of equitable estoppel.[3] See White, 870 F.3d

---

[3] "At issue in this appeal is whether Sunoco, a non-signatory to the credit card agreement and who is not mentioned in the agreement, can compel White to arbitrate." See White v. Sunoco,

at 265. White concerned a putative class action brought against Sunoco in relation to its "Sunoco Rewards Program," which offered customers who purchase gas at Sunoco locations with a credit card issued by Citibank a five-cent per gallon discount to be applied "either at the pump or on their monthly billing statements." Id. at 260. White alleged that despite representations to the contrary, Sunoco did not apply the discount that was advertised as part of its rewards program, and that Sunoco omitted certain material information to induce customers to sign up for the program. Id. at 260.

The action alleged "claims of fraud and fraudulent inducement, negligent misrepresentation, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act" on the part of Sunoco, and "allege[d] no misconduct by Citibank." Id. Pursuant to the Sunoco Rewards Program, White's rewards card was "governed by a [c]ard [a]greement, which he received when he first obtained the card from Citibank."[4] Id.

Sunoco then filed a motion to compel arbitration on the basis of the arbitration clause contained within the card agreement to which it was not a signatory. Id. at 261. The district court denied the motion, and in doing so, "appl[ied] Third Circuit authority on compelling arbitration."[5] Id. The court acknowledged that the arbitration provision was valid and "could only be enforced by signatories to it unless contract, agency, or estoppel principles dictated otherwise," and that none of these theories were applicable to the claims against Sunoco. Id. at

---

Inc., 870 F.3d 257, 259 (3d Cir. 2017). The opinion in White was issued on September 5, 2017, while both J&J and Kelly's renewed motions were pending before this Court.

[4] As the Court of Appeals noted, "[t]he Card Agreement explicitly states that 'we, us, and our mean Citibank, N.A., the issuer of your account' and that 'you, your, and yours mean the person who applied to open this account.'" Id. at 260 (describing terms in card agreement).

[5] However, the district court noted that its decision as to Sunoco's motion "would be the same regardless" of which state's law applied, and, therefore, the court "need not decide the choice-of-law question." See White v. Sunoco, Inc., 189 F. Supp.3d 486 (E.D. Pa. 2016), aff'd, 870 F.3d 257.

9

261-62. The court reasoned that the requirements for equitable estoppel, as articulated in DuPont, were not satisfied because there was an absence of a close relationship between Sunoco and Citibank, and the claims alleged "did not relate to the terms or obligations" within the card agreement.[6] Id. at 262.

The Court of Appeals ultimately affirmed the district court's denial of Sunoco's motion to compel arbitration. Id. at 268. As an initial matter, the court examined which state's law applied to its analysis of equitable estoppel.[7] Concluding that there was no conflict between the law of either applicable state – Florida or South Dakota – because applying either state's law would render the same result, the court reasoned as follows:

> To summarize: both South Dakota and Florida courts would apply the doctrine of equitable estoppel to prevent a signatory from avoiding arbitration against a non-signatory in two circumstances. First, if a plaintiff-signatory alleges concerted conduct on the part of both the non-signatory and another signatory, that plaintiff may be equitably estopped from avoiding arbitration with the non-signatory. Second, if a plaintiff-signatory asserts a claim against a defendant based on an agreement, that plaintiff may be equitably estopped from avoiding arbitration on the basis that the defendant was not a signatory to that same agreement. Neither circumstance is applicable in this case.

---

[6] The court also "reasoned that because a dispute that arises under the [c]ardholder [a]greement is distinct from any dispute arising from a separate agreement with Sunoco, the estoppel principle does not apply to White." Id. at 262.

[7] As stated by the Court of Appeals:
> The forum state is Pennsylvania because the action was brought in the Eastern District of Pennsylvania. However, neither Sunoco nor White argued in their briefs which state's law regarding equitable estoppel should apply under Pennsylvania choice-of-law provisions. . . . Under Pennsylvania's choice-of-law analysis, we examine whether "the laws of the two jurisdictions would produce the same result on the particular issue presented." If the results would be the same, there is no actual conflict and we "should avoid the choice-of-law question." We thus examine whether the laws of Florida and South Dakota regarding equitable estoppel would produce the same result in this case. We conclude that they do.

Id. at 263-64 (footnotes omitted) (citations omitted).

10

Id. at 265.

In concluding that neither of the above circumstances existed, and, therefore, equitable estoppel did not apply, the Court of Appeals emphasized the lack of alleged concerted conduct or misconduct by Sunoco and Citibank and stated that speculation as to "whether White has some related grievance against Citibank" would be improper. Id. (declining to compel arbitration "based on that speculation"). Therefore, the Court concluded that "White cannot be required to arbitrate based on the Card Agreement under South Dakota or Florida law." Id.

Further, remarking on the appropriateness of the parties' reliance on DuPont for the proposition that a non-signatory may compel a signatory to arbitrate a claim based on equitable estoppel under the two-part analysis described supra, the Third Circuit stated that "[t]his reliance is ill-placed, as we did not adopt a rule regarding [equitable] estoppel in DuPont[,] [and] [w]e decline to do so here because the Supreme Court in Arthur Andersen has rejected the analysis referenced in DuPont, which rested on federal law." Id. at 263 n.4. However, despite its emphasis on DuPont being based in federal rather than state law as to equitable estoppel, the Court of Appeals still noted that Pennsylvania state law on equitable estoppel "is essentially the same as the test described in DuPont." Id. at 263 n.5.

B. **Arguments of the Parties**

Although, as explained below, the Court concludes that White is not directly applicable to its analysis of J&J's motion, the Court acknowledges the parties' arguments originally made to the Court in regard to J&J's renewed motion (Doc. Nos. 75, 77, 80), as well as the arguments presented in the briefing submitted in accordance with the Court's November 16, 2017 Memorandum and Order (Doc. Nos. 85, 86, 87).

1. **J&J's Arguments in Favor of Applying Equitable Estoppel and Compelling Arbitration**

11

J&J argues that while it is not a signatory to the binding arbitration agreement, it is entitled to compel Plaintiff to arbitrate his claims against it on the basis of equitable estoppel. More specifically, J&J maintains that equitable estoppel is warranted under DuPont because: (1) there is a close relationship between J&J and Kelly, and (2) there is a sufficient relationship between J&J's alleged wrongs and its contractual obligations and duties. (Doc. No. 75 at 15-16.) As to the first requirement, J&J states that it is closely related to Kelly, as the complaint alleges that J&J "operates more than 250 companies located in 60 countries, and that in order to provide these services, [J&J] uses Kelly to provide some recruitment and hiring services." (Id. at 15) (internal quotation marks omitted) (quoting Doc. No. 1 ¶ 3). Further, J&J refers to Plaintiff's allegations that "he was to be hired to work at a [J&J] location . . . and accordingly, Kelly took all of these steps on behalf of J&J" (id.), as well as the complaint's allegation that "J&J and Kelly have created and implemented national, uniform hiring and staffing policies, procedures, and practices under which they operate" (id.) (citing Doc. No. 1 ¶ 38). According to J&J, therefore, "Plaintiff alleges an adequately close relationship between Kelly and [J&J] such that Plaintiff is bound to arbitrate his claims against both Defendants."[8] (Id. at 16.)

As to the second requirement for equitable estoppel, J&J argues that "there is undoubtedly a relationship between [J&J's] alleged wrongs" and its contractual obligations because "Plaintiff entered into the [b]inding Arbitration Agreement . . . as part of his overall employment application process at Kelly, and his promise to arbitrate must be interpreted in that context." (Doc. No. 80 at 6) (citing Alder Run Land, LP v. Ne. Energy LLC, 622 F. App'x 164, 168 (3d Cir. 2015)). To that end, J&J asserts that Plaintiff's claims "indisputably arise out of his

---

[8] As J&J states, "Plaintiff alleged that Kelly was entirely responsible for Kelly's hiring process and potential placement at [J&J]," and that "[i]ndisputably this hiring process, and the alleged FCRA failures within it, form the very core of Plaintiff's claims." (Doc. No. 75 at 16.)

12

potential employment at Kelly" because Plaintiff is alleging that, contrary to the FCRA provisions related to use of consumer reports in employment decisions, he was not provided with proper notice as part of his potential employment." (Id.) Lastly, J&J asserts that "the propriety of applying the equitable estoppel theory here is further bolstered by the significant extent to which Plaintiff accuses [J&J] and Kelly of engaging in concerted misconduct," stating that "Plaintiff's [c]omplaint describes virtually every factual allegation as one committed by '[J&J] and Kelly' or by 'Defendants.'" (Id. at 7) (quoting Doc. No. 1 ¶¶ 1, 4-5, 7-8, 10-11).

In its supplemental briefing on the relevance of the Third Circuit's opinion in White, J&J states that White "does not affect the applicability of the equitable estoppel doctrine" to this case because White "endorsed the equitable estoppel doctrine, applying a similar test to that which [J&J] has asked this [C]ourt to apply, but found it inapplicable to the facts presented in that case." (Doc. No. 85 at 2.) According to J&J, the facts at play in White are materially distinguishable from those in the instant case on three grounds. First, J&J states that while the plaintiff in White brought suit against only the non-signatory (Sunoco), here, Plaintiff "specifically brings his claims against both Kelly and [J&J], relying on the identical set of alleged facts and Kelly's conduct to support his claims against [J&J]." (Id. at 9.) Second, J&J maintains that in contrast to White, where the court "decline[d] to speculate as to whether White ha[d] some related grievance against [the signatory]," Plaintiff has alleged that Kelly acted on J&J's behalf and J&J relied "upon Kelly's use of the [d]isclosure [f]orm to obtain background reports." (Id.) (first alteration in original). Third, according to J&J, unlike the fact pattern in White, "where Citibank's narrow agreement was limited to disputes regarding the plaintiff's account or relationship with Citibank, here, Kelly's [b]inding [a]rbitration [a]greement covers all

13

claims relating to Plaintiff's employment, which Plaintiff alleges was to be with [J&J] through Kelly." (Id. at 12.)

### 2. Plaintiff's Arguments Against Applying Equitable Estoppel and Compelling Arbitration

In opposition, Plaintiff argues that J&J has failed to demonstrate the applicability of equitable estoppel.[9] (Doc. No. 77 at 10.) First, Plaintiff maintains that, under the two-pronged test enunciated in DuPont, equitable estoppel would be inapposite because J&J has not established that Plaintiff's claims against it are "intertwined with the underlying contractual obligations," as "Plaintiff's claims do not depend on Kelly's freestanding [a]rbitration [a]greement." (Id. at 12.) Plaintiff refers to the complaint and states that the complaint does not mention the arbitration agreement, and maintains that because Plaintiff's claim against J&J "relies on the fact that J&J failed to send Plaintiff a pre-adverse action notice, copy of the consumer report procured from Yale, and a written description of Plaintiff's rights under the FCRA," any determination that the arbitration agreement was unenforceable "would not affect Plaintiff's claims against J&J (or Kelly) whatsoever." (Id. at 12.) Second, Plaintiff argues that "J&J does not have a close relationship with Kelly" for purposes of the relevant analysis employed by the Third Circuit, as "[c]oncerted activity alone is not enough," and "J&J fails to cite [] a single case in which concerted activity, by itself, established the necessary close relationship." (Id. at 16-17.)

---

[9] In addition to arguing that equitable estoppel is inapplicable to J&J's motion to compel arbitration, Plaintiff maintains that the motion should be denied because "J&J cannot establish that Plaintiff's claims against it are within the substantive scope of Kelly's [a]rbitration [a]greement." (Doc. No. 77 at 17.) Further, Plaintiff asserts that "J&J cannot possibly seek to take advantage of Kelly's [a]rbitration [a]greement because it has its own binding contract with Plaintiff – the [e]mployment [a]greement – which expressly states that Plaintiff does not agree to binding arbitration." (Id. at 18.) However, because the Court will deny J&J's motion on the grounds that equitable estoppel is inapplicable to J&J's motion to compel, the Court declines to address the merits of the aforementioned arguments made by Plaintiff.

In his additional briefing on the applicability of equitable estoppel following <u>White</u>, Plaintiff asserts that "two main approaches to equitable estoppel have emerged: a strict test and a range of somewhat more lenient tests," identifying "the strict test" as the aforementioned analysis discussed in <u>DuPont</u>.[10] (Doc. No. 86 at 6.) According to Plaintiff, "[t]his test does not allow concerted misconduct among the defendants to substitute for either essential element of the test." (Id. at 7.) Highlighting that the Court of Appeals in <u>White</u> characterized the standard articulated in <u>DuPont</u> as effectively the same as the governing analysis under Pennsylvania law, Plaintiff likens J&J's motion to that which was denied by the district court in <u>White</u>. (Id. at 9.) Specifically, Plaintiff asserts that "[t]he reasons Sunoco's motion would have failed under Pennsylvania law are the same as why J&J's equitable estoppel argument fails," as J&J does not "show any relationship whatsoever between the claims raised in Plaintiff's [c]omplaint and Kelly's freestanding arbitration agreement," and "does not have the requisite close relationship with Kelly." (Id.)

Plaintiff also disputes J&J's interpretation of <u>White</u> on the basis that "J&J's claim that <u>White</u> endorses its concerted misconduct theory relies on a misinterpretation of <u>White</u>" in that "<u>White</u> applie[d] the more lenient approach to equitable estoppel only because it determined that this theory is viable under Florida and South Dakota law."[11] (Id. at 9-10.) However, Plaintiff adds, "even if J&J were correct that concerted misconduct has some relevance under Pennsylvania law . . . J&J openly concedes that it still must prove 'a close relationship' between the 'alleged wrongs' to the non-signatory's obligations and duties in the contract." (Id. at 10.)

---

[10] Plaintiff goes on to state that "other jurisdictions take a range of more lenient approaches, wherein they may also consider concerted misconduct among the defendants to varying degrees of relevance." (Doc. No. 86 at 7.)

[11] As stated by Plaintiff, "[t]he Third Circuit was explicit in <u>White</u> that Pennsylvania follows a different standard." (Id. at 10.)

15

According to Plaintiff, "even under this somewhat more lenient standard advanced by J&J, J&J's argument still fails for the simple reason that J&J alleges nothing but concerted misconduct."[12] (Id.) Lastly, Plaintiff states that "[i]f anything, Kelly's arbitration agreement is narrower than that in White, because it limits the covered claims to those 'that arise between me [Plaintiff] and Kelly Services, its related and affiliated companies, and/or any current or former employee of Kelly Services or any related or affiliated company."[13] (Id. at 11) (second alteration in original).

### C. Analysis of J&J's Motion

The Court concludes that equitable estoppel does not apply to J&J's motion, and because Plaintiff is not estopped from avoiding arbitration, J&J's motion to compel arbitration will be denied. First, the Court notes that the requirements for equitable estoppel, whether under Michigan law, Pennsylvania law, or the approach recognized by the Third Circuit in DuPont, have not been satisfied. Even if the Court were to conclude that a close relationship exists between J&J and Kelly for purposes of the relevant analysis, equitable estoppel would not apply because Plaintiff's claims against J&J are not "intimately founded in and intertwined with the underlying contract obligations." See DuPont, 269 F.3d at 199 (citing Thomson-CSF, 64 F.3d at 778).

---

[12] Plaintiff also argues that under White, J&J's argument "that it could combine the arbitration agreement with various other documents provided to the plaintiff to create one integrated contract" for purposes of compelling arbitration is meritless because the Court of Appeals rejected such an argument when it concluded that there was "no legal basis" for finding that such an integrated agreement existed. (Id. at 12.) However, as explained more fully in the Court's analysis, the Court will decline to address this argument because it does not apply to the instant case, and the court in White addressed the issue of whether there was an integrated agreement in the context of one of "two alternative arguments Sunoco advance[d] which do not relate to estoppel." See White, 870 F.3d at 266.

[13] According to Plaintiff, "J&J concedes that it falls into none of these categories," and "[t]hus, by J&J's own admission, Plaintiff's claims are outside the coverage of Kelly's arbitration agreement." (Doc. No. 86 at 11.)

16

In the instant case, Plaintiff alleges that both J&J and Kelly violated Section 1681b(b)(3)(A) of the FCRA by failing to provide him with the relevant consumer report before taking an adverse employment action against him. (Doc. No. 1 ¶¶ 67-68.) However, notwithstanding the Court's previous conclusions as to the underlying employment agreement and arbitration agreement (Doc. No. 83 at 11), Plaintiff maintains a separate means of recovering against J&J, which militates against applying equitable estoppel. See, e.g., Devon Robotics, 2009 WL 4362822, at *5 ("The essential question . . . is whether plaintiffs would have an independent right to recover against the non-signatory defendants even if the contract containing the arbitration clause were void."); see also Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004) (quoting In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002)) ("The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel."). Because Plaintiff seeks relief against J&J under the FCRA, which requires a party using a consumer report for employment purposes to provide the report "to the consumer to whom the report relates" prior to taking any adverse action based on the report, see 15 U.S.C. § 1681b(b)(3)(A), Plaintiff's claim against J&J does not rely on any underlying contractual agreement with Kelly as a basis for asserting its claim against J&J. See Turkey Run Props. L.P. v. Air Structures Worldwide, Ltd., No. 4:09-cv-217, 2009 WL 10685546, at *7 (M.D. Pa. June 30, 2009).[14] Accordingly, because Plaintiff's claim against J&J

---

[14] This case is distinguishable from cases such as Turkey Run, where the district court granted the motion because "it cannot be reasonably said that plaintiff is not relying upon the [a]greement entered into with [a defendant] to serve as its basis for asserting claims against the other defendants." See Turkey Run Props. L.P. v. Air Structures Worldwide, Ltd., No. 4:09-cv-217, 2009 WL 10685546, at *7 (M.D. Pa. June 30, 2009).

is not sufficiently intertwined with any contractual obligation on the part of J&J, the Court concludes that equitable estoppel is not applicable.

Additionally, the Court's conclusion is unaffected by the Third Circuit's precedential opinion in White. Although the Third Circuit in White affirmed its acceptance of the theory of equitable estoppel, the Court of Appeals' analysis as to its applicability was governed by South Dakota and Florida law. See White, 870 F.3d at 265 (stating that "both South Dakota and Florida courts would apply the doctrine of equitable estoppel" and concluding that "White cannot be forced to arbitrate under principles of equitable estoppel under either South Dakota or Florida law"). As the Court of Appeals noted, those states' analyses include a determination of whether "a plaintiff-signatory alleges concerted conduct on the part of both the non-signatory and another signatory," which differs from the framework recognized by the court in DuPont. Compare White, 870 F.3d at 265, with DuPont, 269 F.3d at 199. Further, this Court concludes that White did not change any aspect of DuPont that is relevant to the case at bar. Although the Court of Appeals in White noted that DuPont "rested on federal law," the court also acknowledged that "[t]he equitable estoppel rule in Pennsylvania is essentially the same as the test described in DuPont." White, 870 F.3d at 263 nn.4,5. Because J&J's motion may be analyzed under either Michigan or Pennsylvania law, as explained supra, this Court's use of DuPont does not conflict with the Court of Appeals' analysis of equitable estoppel in White. Accordingly, White does not dictate a different resolution of J&J's motion than would DuPont. Because equitable estoppel does not apply and J&J cannot compel arbitration of Plaintiff's claims against it, J&J's motion will be denied.

In addition, the Court concludes that granting J&J's alternative request for a stay of proceedings between J&J and Plaintiff, pending the arbitration between Kelly and Plaintiff (Doc.

Nos. 83, 84), would be improper. A stay may be appropriate "even when the action encompasses both arbitrable and non-arbitrable claims." See, e.g., Miron, 342 F. Supp.2d at 334 (citing Feinberg v. Ass'n of Trial Lawyers Assurance, No. 01-cv-6966, 2002 WL 31478866, at *7-8 (E.D. Pa. 2002)). However, the Court must exercise caution in granting such a request, as the Court has explained supra that Plaintiff's claims against J&J are sufficiently removed from those against Kelly so as to warrant a denial of J&J's motion to compel arbitration, and staying proceedings in this case could, therefore, contradict the effect of such a denial. See CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139 (3d Cir. 2004) (reversing order staying litigation after motion to compel arbitration was denied and agreeing that "the [d]istrict [c]ourt took away with one hand the very thing it awarded with the other"). Further, the Court concludes that in this instance, concerns as to judicial economy and efficiency do not warrant a stay, in light of the Court's conclusion that J&J cannot compel arbitration. See id. (reasoning that "judicial efficiency" did not justify stay and emphasizing potential for a stay to interfere with a party's right to its "day in court"). Accordingly, the Court will also deny J&J's motion with respect to its request for a stay of proceedings pending arbitration between Plaintiff and Kelly.

## IV. CONCLUSION

Based on the foregoing, J&J's motion (Doc. No. 74), will be denied in its entirety. An appropriate Order follows.

s/ Yvette Kane  
Yvette Kane, District Judge  
United States District Court  
Middle District of Pennsylvania