IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

T JASON NOYE, :
individually and on behalf :
of all others similarly situated, : No. 1:15-cv-2382
    Plaintiff :
 : (Judge Kane)
    v. :
 :
JOHNSON & JOHNSON, et al., :
    Defendants :

**MEMORANDUM**

Presently before the Court in the above-captioned case is the briefing submitted by Plaintiff T Jason Noye ("Plaintiff") and Defendant Johnson & Johnson Services, Inc. ("J&J") addressing the outstanding issue of whether Plaintiff's claim against J&J is covered by the arbitration agreement in this case (Doc. Nos. 108, 109, 110), following the United States Court of Appeals for the Third Circuit's April 4, 2019 opinion vacating this Court's prior Memorandum and Order denying J&J's motion to compel arbitration on the theory of equitable estoppel (Doc. Nos. 104, 104-1). For the reasons that follow, the Court will deem Plaintiff's claim against J&J arbitrable, dismiss Plaintiff's complaint, and direct that this case be closed.

**I.  BACKGROUND**

Plaintiff initiated the above-captioned action on December 11, 2015 by filing a complaint against J&J and Defendant Kelly Services, Inc. ("Kelly") in this Court, both individually and on behalf of all others similarly situated, in connection with his previous application for employment with J&J. (Doc. No. 1.) This Court previously summarized the pertinent factual details of this case as follows:

> In February 2015, [Plaintiff] interviewed at a job fair for a position with J&J through the staffing company, Kelly. (Doc. No. 76-1 at 2.) On February 11, 2015, a recruiter from Kelly offered Plaintiff a position with J&J as an operations

supervisor. (Doc. No. 76-1 at 2; see Doc. No. 76-4 at 16.) Plaintiff responded to the Kelly recruiter by stating that he "would like to accept the position." (Doc. No. 76-2 at 2.) On February 12, 2015, the Kelly recruiter asked Plaintiff to complete Kelly's online application. (Doc. No. 76-3 at 2.)

The online application required Plaintiff to complete the then-viewed page before proceeding to the next page of the application. (Doc. No. 72-4 at 12-13; Tr. at 88: 2-16; 93: 20- 22.) One such page of the application was an "arbitration screen" that included a link to a document titled "Dispute Resolution and Mutual Agreement to Binding Arbitration" ("Arbitration Agreement"). (Doc. Nos. 72-4 at 14; Tr. at 99: 3-6; 100: 3-11; 72-5 at 2; Tr. at 37: 12-21.) Paragraph 1 of the Arbitration Agreement provides, in relevant part, as follows:

> 1. Agreement to Arbitration. Kelly Services, Inc. ("Kelly Services") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise between me and Kelly Services, its related and affiliated companies, and/or any current or former employee of Kelly Services or any related or affiliated company.

(Doc. No. 72-2 at 2.) "Covered Claims" under the Arbitration Agreement [at Paragraph 2] include "all common law and statutory claims related to [Plaintiff's] employment . . . ." (Id.) The Arbitration Agreement states in bold that arbitration is the "only forum for resolving Covered Claims" and that Defendant Kelly and Plaintiff waive the right to a jury- and bench trial. (Id.) The online application did not allow Plaintiff to bypass the "arbitration screen," though the terms of the Arbitration Agreement were only viewable if the applicant clicked on a link at the top of the screen. (Doc. No. 72-5 at 2; Tr. at 38: 1-24.)

At another stage in the application, Plaintiff informed Kelly that he had been convicted of a crime. (Doc. Nos. 72-4 at 11; Tr. at 87: 15-24; 76-12 at 2.) Kelly later requested information about Plaintiff's conviction (Doc. No. 76-7 at 2), and Plaintiff alleges that he provided the additional documentation "promptly" thereafter (Doc. No. 1 ¶¶ 28-29). On February 13, 2015, after completing the online application, Plaintiff printed his name and signed a separate document that was titled: "Employment Agreement for Contract Labor Employees on Assignment at Johnson & Johnson" ("Employment Agreement"). (Doc. No. 76-10 at 5; see Doc. No. 76-11 at 8.) Kelly employees administered this Employment Agreement "in connection with candidates for hire at Kelly who would be placed at J&J locations." (Doc. No. 76-4 at 15; Tr. at 97: 20-24.)

On February 20, 2015, a Kelly employee signed the Employment Agreement (Doc. Nos. 76 at 12; 77-5 at 20; Tr. at 99: 2-20), and a Kelly "on-boarding coordinator" also sent Plaintiff an e-mail stating that Plaintiff had "been hired" and welcoming him to "the Kelly Team!" (Doc. No. 76-8 at 2-3). However, on March 13, 2015, the Kelly recruiter informed Plaintiff via e-mail that "J&J cannot

2

> hire" Plaintiff and noted that he would keep Plaintiff "in mind for other
> opportunities." (Doc. No. 76-13 at 2.) According to the complaint, J&J decided
> not to hire Plaintiff because of a background report Kelly had purchased from
> Yale Associates, Inc. ("Yale"). (Doc. No. 1 ¶¶ 4, 30, 32-33.) Plaintiff claims that
> the Yale report misreported four summary offenses as misdemeanors and caused
> him to lose the Johnson & Johnson position. (Id. ¶ 34.)

(Doc. No. 83 at 1-3) (footnotes omitted). Plaintiff initiated the above-captioned case against Defendants J&J and Kelly on December 11, 2015, and in doing so, alleged that Defendants violated the Fair Credit Reporting Act ("FCRA")'s requirements as to disclosure and regarding providing copies of a given report to an applicant, which are codified at 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), respectively. (Doc. No. 1.) Specifically, Plaintiff alleged through Count I of the complaint that Kelly violated 15 U.S.C. § 1681b(b)(2), and that both Kelly and J&J violated 15 U.S.C. § 1681b(b)(3). (Id. at 17-18.) In bringing this complaint, Plaintiff brought suit individually and also on behalf of putative class members. (Id. at 1.)[1]

Instead of filing an answer to the complaint, Kelly filed a motion to compel arbitration and stay the case on February 22, 2016. (Doc. No. 39.) The Court denied this motion without prejudice and ordered the parties to conduct limited arbitration-related discovery. (Doc. No. 62.) Also on February 22, 2016, J&J filed its own motion to compel arbitration (Doc. No. 40), which this Court also denied without prejudice on September 7, 2016 (Doc. No. 63). Both Kelly and J&J subsequently filed renewed motions to compel arbitration on January 30, 2017. (Doc. Nos. 72, 74.) In a Memorandum and Order dated November 6, 2017, the Court granted Kelly's

---

[1] Plaintiff also filed suit, individually and on behalf of all others similarly situated, in the action captioned Noye v. Yale Associates, No. 1:15-cv-02253, in this Court through the filing of a complaint on November 24, 2015. (Doc. No. 1.) In that case, Plaintiff alleged that Yale violated the FCRA in connection with its maintenance of "an FCRA database to prepare and furnish consumer reports for employment and other purposes[,]" which Yale used to "provide these consumer reports to prospective and existing employers of Plaintiff and members of the [c]lass." (Id. at 1.) After the parties reached a proposed settlement and the Court approved the parties' joint motion for preliminary approval of class action settlement, the Court conducted a final fairness hearing and approved the final class settlement on December 17, 2019. (Doc. No. 100.)

motion and granted in part and denied in part J&J's motion. (Doc. Nos. 83, 84.) As to J&J's motion, the Court observed that "J&J urges the Court to also order Plaintiff to arbitrate his claims against J&J pursuant to the Arbitration Agreement" by arguing "that, even as a non-signatory to the Arbitration Agreement, it may compel arbitration under the theory of equitable estoppel." (Doc. No. 83 at 23.) Accordingly, the Court declined to resolve J&J's motion at that juncture and directed the parties to submit additional briefing addressing the applicability of equitable estoppel in light of an opinion issued by the United States Court of Appeals for the Third Circuit in White v. Sunoco, 870 F.3d 257 (3d Cir. 2017). (Id.)

After the parties submitted this supplemental briefing (Doc. Nos. 85, 86, 87), the Court issued a Memorandum and Order on May 11, 2018 denying J&J's motion to compel arbitration (Doc. Nos. 88, 89), which J&J appealed on May 29, 2018 (Doc. No. 90). On April 4, 2019, the Court of Appeals issued an opinion vacating this Court's Order denying J&J's motion to compel arbitration, holding that J&J could invoke equitable estoppel to compel arbitration, and remanding the case in order for this Court to resolve the remaining issue of whether Plaintiff's FCRA claim against J&J "is a dispute that is arbitrable under the Arbitration Agreement." (Doc. No. 104-1.) As to this last point, the Court of Appeals stated that "[i]n doing so, the [d]istrict [c]ourt may also consider whether the Employment Agreement, through which Kelly informed [Plaintiff] that he would be obligated to participate in 'non-binding ADR' with J&J had J&J offered such a process, . . . impacts the arbitrability of this claim against J&J under the Arbitration Agreement." (Id. at 13.) Following the issuance of this opinion and the receipt of the Court of Appeals' mandate on April 26, 2019 (Doc. No. 104), the Court ordered the parties to submit briefing on the question of whether Plaintiff's claim against J&J is arbitrable (Doc. No. 105). Having been fully briefed (Doc. Nos. 108, 109, 110), this matter is ripe for resolution.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides the "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." See Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). Even in light of the FAA, arbitration is "strictly a matter of contract." Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Id. "Thus, in deciding whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem., 584 F.3d at 527).

As to the first question, the United States Court of Appeals for the Third Circuit has clarified "the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached." See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). In effect, to determine whether there is a valid agreement to arbitrate, a district court "must initially decide whether the determination is made under Fed. R. Civ. P. 12(b)(6) or 56." See Sanford v. Bracewell & Guiliani, LLP, No. 14-1763, 2015 WL 4035614, at *2 (3d Cir. July 2, 2015). Because the Court already permitted limited discovery on the question of arbitrability and it has been determined that J&J may compel arbitration by operation of equitable estoppel, the Court applies the summary judgment standard to the instant question of whether Plaintiff's claim against J&J is arbitrable.

5

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At the summary judgment stage, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. See id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). In deciding a motion for summary judgment, the Court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Moreover, the Court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the Court must simply "determine whether there is a genuine issue for trial." See id.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party

6

"fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. See Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. See Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III.     DISCUSSION

### A.     Legal Standard Applicable to this Court's Arbitrability Determination

Given that "[f]ederal law is decidedly pro-arbitration[,]" the FAA's purpose "is 'to . . . place arbitration agreements upon the same footing as other contracts.'" See Neith v. ESquared Hosp. LLC, No. 19-cv-13545, 2020 WL 278692, at *5 (D. N.J. Jan. 16, 2020) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). "Thus, the statute makes agreements to arbitrate 'valid, irrevocable, and enforceable' . . . subject only to traditional principles of contract formation and interpretation." Id. (quoting 9 U.S.C. § 2). "While the FAA declares a liberal federal policy favoring arbitration agreements,' the FAA 'was not intended to render arbitration agreements more enforceable than other contracts.'" See Golden Gate Nat'l Senior Care, LLC v. Beavens, 123 F. Supp. 3d 619, 634 (E.D. Pa. 2015) (quoting Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 660-61 (Pa. Super. Ct. 2013)). "A court cannot compel parties to arbitrate 'absent an agreement between them to arbitrate that issue.'" Id. (citing Pisano, 77 A.3d at 661). Accordingly, the FAA "instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." See

Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (citing Volt Info. Sciences., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475 (1989)); see also JPMorgan Chase & Co. v. Custer, No. 15-cv-6288, 2016 WL 927339, at *4 (D. N.J. Mar. 10, 2016) ("Ordinary state contract law governs the . . . enforceability of arbitration agreements." (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995))).

### B. Arguments of the Parties

#### 1. J&J's Arguments in Support of Arbitrability

In sum, J&J argues that Plaintiff's claim against it is arbitrable when the applicable employment documents are considered in light of the relevant legal framework. (Doc. No. 108.) In support of this proposition, J&J advances the following four (4) primary arguments: (1) that the Third Circuit's mandate in this case leaves unresolved only the question of whether Plaintiff's dispute with J&J "falls within the substantive scope of his arbitration agreement"; (2) Plaintiff's dispute with J&J "plainly falls within the substantive scope of his arbitration agreement, just as this Court has already ruled regarding the same dispute with Kelly"; (3) "as this Court has also ruled, the employment agreement did not supersede the arbitration agreement, and in any event[,] it could not affect arbitrability under that agreement"; and (4) "any remaining doubt would have to be resolved in favor of arbitration under bedrock principles of federal law." (Id. at 2.) As to its first point, J&J quotes the Third Circuit's mandate, noting that, "[a]s the Third Circuit phrased it, this remaining question is whether [Plaintiff's] claim against J&J 'is a dispute that is arbitrable under the Arbitration Agreement.'" (Id. at 11) (citing Doc. No. 104-1 at 13). Turning to its second argument, J&J states that "[t]he substantive scope of the Arbitration Agreement by its plain text covers [Plaintiff's] claim against J&J" because the "Covered Claims" definition provided in Paragraph 2 of the Arbitration Agreement includes "all . . . statutory

8

claims relating to [Plaintiff's] employment" and Paragraph 2 also states, in pertinent part, "I understand and agree that arbitration is the only forum for resolving covered claims." (Id. at 12) (omission in original) (citing Doc. No. 75-2 at 2). In addition, J&J states that arbitration clauses pertaining to "any disputes 'arising out of or relating to' . . . an employee's employment are . . . considered broad in scope." (Id.) (citing Zeller-Landau v. Sterne Agee CRT, LLC, No. 17-cv-3962, 2018 WL 334970, at *4 (E.D. Pa. Jan. 9, 2018)). According to J&J, Plaintiff's "claim against Kelly and [J&J] under 15 U.S.C. § 1681b(b)(3)(A) '[relates to]' his employment as a factual matter under the allegations in [Plaintiff's] complaint[,]" stating that, "[i]ndeed, the claim affirmatively depends upon his employment as a legal matter because the relevant FCRA provision requires an employment relationship in order for [Plaintiff] to sue [J&J] in the first place" and Plaintiff's "theory is that he established the requisite relationship with [J&J] 'through Kelly.'" (Id. at 12-13.) J&J adds that "[t]his Court thus previously had no trouble rejecting [Plaintiff's] argument that the scope of the Arbitration Agreement did not cover this claim as to Kelly, where 'Plaintiff's claims are based on his application for employment and, by extension, on the Arbitration Agreement.'" (Id. at 13) (quoting Doc. No. 61 at 5-6). As stated by J&J, "[b]ecause the claim asserted jointly against Kelly and [J&J] 'relate[s] to Plaintiff's employment,' it is covered under Paragraph 2." (Id.) (third alteration in original) (citing Doc. No. 83 at 21-22).[2]

As to its third argument in support of arbitration – that this Court has already held that "the Employment Agreement did not supersede the Arbitration Agreement, and in any event it

---

[2] In further support of this point, J&J asserts that Plaintiff's FCRA claim against it is "a statutory claim[] relating to [Plaintiff's] employment" that is "substantively the same as [Plaintiff's] claims against Kelly" in that "[b]oth are based on the same legal theory and the same facts arising from the same employment relationship." (Doc. No. 108 at 15) (first alteration in original).

9

could not affect arbitrability under that agreement" – J&J notes that, on appeal, Plaintiff expressly informed the Court of Appeals that he was not challenging this Court's earlier ruling "that the Employment Agreement did not supersede the Arbitration Agreement but[,] rather, to the contrary, the two should 'be read to stand together or subsist together.'" (Id. at 16-17) (second set of internal quotation marks omitted) (quoting Doc. No. 83 at 11). J&J avers that Plaintiff's "concession was prudent, since this Court's analysis was correct" in that "[n]othing in the Employment Agreement affects the Arbitration Agreement." (Id. at 17.) Regarding J&J's fourth argument in support of arbitration – that "any remaining doubt [as to arbitrability] would have to be resolved in favor of arbitration under bedrock principles of contract law" – J&J notes that the FAA governs the Arbitration Agreement in this case and the general principle favoring arbitration in the context of the FAA mandates that this Court deem Plaintiff's claim against J&J arbitrable. (Id. at 18-19.) Lastly, J&J also requests, in the alternative, that this Court stay the proceedings between Plaintiff and J&J while Plaintiff and Kelly arbitrate. (Id. at 19-20.)

### 2. Plaintiff's Arguments in Opposition to Arbitrability

In opposition, Plaintiff asserts that: (1) his claim against J&J does not fall within the scope of the Arbitration Agreement; (2) the Employment Agreement states that Plaintiff does not agree to binding arbitration; and (3) J&J is not entitled to its alternative request for a stay. (Doc. No. 109.) In support of his first primary point, Plaintiff maintains that the scope of the Arbitration Agreement is a matter of state law, rather than federal law, which does not determine arbitrability. (Id. at 13-14.) According to Plaintiff, "the Third Circuit confirmed, and [] case law . . . makes clear that the two possible state law choices – Pennsylvania and Michigan law – are the same with respect to the matters in dispute." (Id. at 14.) Plaintiff maintains that under either jurisdiction's law, "it is clear that Kelly's Arbitration Agreement does not cover Plaintiff's

10

claim against J&J" because Paragraph 1 of the Arbitration Agreement limits the scope of the agreement to "Covered Claims" arising between Plaintiff and Kelly. (Id. at 14-15.) As to this point, Plaintiff cites Elwyn v. DeLuca, 48 A.3d 457, 463 (Pa. Super. Ct. 2012), for the proposition that in the context of a similar agreement, because the non-signatory defendant was "was neither a party to the agreement nor the owner or contractor . . . the claims against him [] fell outside the substantive scope of the agreement." (Doc. No. 109 at 15) (citing Elwyn, 48 A.3d at 463). According to Plaintiff, Elwyn is instructive for purposes of the instant case because:

> While the court in Elwyn acknowledged Pennsylvania's equitable estoppel case law, i.e., Dodds v. Pulte Home Corp., 909 A.2d 348, 349 (2006), it reasoned that Dodds did not compel a different result because the agreement in Dodds did not limit coverage to claims involving particular entities. Id. at 463. In other words, equitable estoppel can add parties allowed to enforce an agreement, but it does not alter the plain language in an agreement limiting the agreement's substantive scope to claims between particular individual.
>
> Elwyn compels the same outcome here. Just as in Elwyn, Kelly's Arbitration Agreement limits its coverage to claims between particular entities, and that clause must be enforced. Otherwise, this Court would be violating black letter contract law by effectively reading the language limiting claims to those between Plaintiff and "Kelly Services, its related and affiliated companies, and/or any current or former employee of Kelly Services or any related or affiliated company" out of the agreement entirely. This is not and cannot be the law.

(Doc. No. 109 at 16-17) (footnote omitted). On a related note, Plaintiff asserts that the Arbitration Agreement "could have simply covered all claims arising from Plaintiff's employment without any language limiting the claims to those between particular entities" but, in this case, "the parties bargained for Kelly's Arbitration Agreement to apply only to claims between specific entities, and that term cannot suddenly be eliminated from the agreement at J&J's whim." (Id. at 17-18.) Plaintiff adds that J&J "attempts to twist" Paragraph 2 of the Arbitration Agreement by omitting language indicating that "Kelly Services and [Plaintiff]"

11

agree to waive their jury trial rights in favor of arbitration, arguing that, rather, "Paragraph 2 thus serves to confirm, rather than to eliminate, the limits in Kelly's Arbitration Agreement set forth in Paragraph 1." (Id. at 18-19.) According to Plaintiff, therefore, "[t]he limitation of claims to those involving Kelly, alone, requires this Court to deny J&J's bid for arbitration." (Id. at 19.)[3]

In addition, Plaintiff states that "J&J cannot seek to take advantage of Kelly's Arbitration Agreement because it has its own binding contract with Plaintiff – the Employment Agreement – which expressly states that Plaintiff does not agree to binding arbitration." (Id.) In further support of this point, Plaintiff notes that "one day after Plaintiff completed Kelly's online application, he signed the Employment Agreement[,]" which "provides that Plaintiff's 'agreement commits you [Plaintiff] to use non-binding ADR methods . . . but it does not commit you to use any system, service, or process that is legally binding with respect to the dispute itself (such as binding arbitration).'" (Id.) (second alteration in original) (quoting Doc. No. 109-9). Plaintiff adds that "[t]he Employment Agreement binds J&J because Kelly entered into it as J&J's agent or apparent agent" by operation of traditional agency principles. (Id.) According to Plaintiff, "J&J is not free to ignore the terms of its own contract simply because it prefers the terms of Kelly's agreement" and "J&J's estoppel argument does not alter this outcome because

---

[3] In reply, J&J characterizes Plaintiff's proffered interpretation of the agreement as "wishful thinking" on the grounds that "[a]ll of Paragraph 2 indicates that both signatories agreed to arbitration of all 'Covered Claims,' which by definition included all statutory claims relating to [Plaintiff's] employment, not just those arising between Kelly and [Plaintiff]." (Doc. No. 110 at 8.) J&J also asserts that "it would be a different matter if [J&J] sought to compel arbitration as to a claim that Kelly could not claim was arbitrable . . . [b]ut [J&J] here seeks to compel arbitration as to a claim that this Court has properly found is arbitrable as to Kelly." (Id. at 9.) According to J&J, therefore, "[b]ecause the Third Circuit has ruled that [J&J] can enforce the agreement just like Kelly can, it would be improper to rule that [J&J] cannot do so on the ground that it is not Kelly." (Id.)

12

estoppel cannot override a binding contract or substitute for the parties' intent." (Id. at 19-20.)[4] Finally – in response to J&J's alternative request for a stay of proceedings – Plaintiff notes that the arbitration proceedings with Kelly have concluded and, therefore, ordering a stay would not serve a purpose with respect to the instant case. (Id. at 21.)

### C. Whether Plaintiff's Claim Against J&J Is Arbitrable

Upon review of the record in this case, the parties' arguments, and the applicable law, the Court finds that Plaintiff's FCRA claim against J&J falls within the scope of the Arbitration Agreement and is, therefore, arbitrable. As noted above, this determination entails a two-part inquiry in which the Court must ascertain: (1) whether the relevant arbitration agreement is valid and enforceable, and (2) whether the relevant claim falls within the scope of said agreement. See, e.g., Flintkote Co., 769 F.3d at 220. With regard to the former point, the validity of the Arbitration Agreement is not at issue, and it has already been determined that J&J may compel arbitration pursuant to the Arbitration Agreement under the theory of collateral estoppel, as confirmed by the opinion of the Court of Appeals issued in this case. (Doc. No. 104-1.) Accordingly, the Court proceeds to the second prong of the governing analysis: whether Plaintiff's FCRA claim against J&J is arbitrable.

For this Court to determine the arbitrability of a claim, the Court must look to the applicable state law. See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009) (recognizing "background principles of state contract law regarding the scope of [arbitration] agreements" governed by the FAA). As Plaintiff notes, the laws of Pennsylvania or Michigan,

---

[4] To that end, Plaintiff posits that "[t]here is no plainer evidence that J&J and Plaintiff did not intend to agree to arbitrate than the Employment Agreement" because "[i]f J&J had wanted Plaintiff to agree to arbitration, then it would have inserted an arbitration clause into its Employment Agreement[,]" but, "[i]nstead, it did the exact opposite – it allowed the inclusion of a clause expressly not committing Plaintiff to binding arbitration." (Doc. No. 109 at 21.)

13

the states whose laws would be pertinent to the instant analysis,[5] would yield the same results as to this issue, and, therefore, this Court may apply either state's law. (Doc. No. 109 at 14.) "Pennsylvania law, like federal law, favors the enforcement of arbitration agreements." Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 624 (3d Cir. 2009) (citing Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 n.2 (Pa. 2007)). Accordingly, an order deeming Plaintiff's claim against J&J arbitrable "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." See Masoner v. Educ. Mgmt. Corp., 18 F. Supp. 3d 652, 660 (W.D. Pa. 2014) (internal quotation marks omitted) (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 527 (3d Cir. 2009)).

Applying these principles to the case at bar, the Court finds that Plaintiff's FCRA claim against J&J falls within the scope of the Arbitration Agreement. As J&J aptly notes (Doc. No. 108 at 13), this Court previously concluded that Plaintiff's claims against Kelly fell within the scope of the Arbitration Agreement (Doc. No. 83 at 21-22) (stating that "even assuming arguendo that [the] Arbitration Agreement 'cover[s] only those claims arising after the start of Plaintiff's employment . . . the 15 U.S.C. § 1681b(b)(3) claim would still relate to Plaintiff's employment because: (1) Defendant Kelly hired Plaintiff on or around February 2015; (2) J&J rescinded the position on March 14, 2017[;] . . . and (3) the J&J assignment was rescinded due to

---

[5] As discussed more fully in this Court's November 6, 2017 Memorandum granting Kelly's motion to compel arbitration and ordering additional briefing on J&J's motion to compel, "[t]he Arbitration Agreement includes a 'choice of law' section that provides that 'any disputes related to my employment relationship with Kelly [] shall be governed by the laws of the State of Michigan . . . regardless of conflicts of law principles.'" (Doc. No. 83 at 7 n.4) (quoting Doc. No. 72-2 at 2). Plaintiff's post-remand brief states that "[h]ere, the parties have previously agreed, the Third Circuit confirmed, and the case law detailed below makes clear that the two possible state law choices – Pennsylvania and Michigan law – are the same with respect to the matters in dispute." (Doc. No. 109 at 14.)

a background report that was not completed until March 10, 2017" (second alteration in original)).[6] The Court finds no reason to reach a different conclusion with respect to Plaintiff's claim against J&J, and in light of the applicable presumption in favor of arbitrability, the Court is constrained to find that the Arbitration Agreement "is susceptible of an interpretation that covers [Plaintiff's] claims in this case." See Masoner, 18 F. Supp. 3d at 661 (citing Century Indem. Co., 584 F.3d at 527). The Court also notes that, in vacating this Court's prior Order denying J&J's motion to compel arbitration on the basis of equitable estoppel, the Court of Appeals remarked that, "[i]n [determining the arbitrability of Plaintiff's claim], the [d]istrict [c]ourt may also consider whether the Employment Agreement, through which Kelly informed Noye that he would be obligated to participate in 'non-binding ADR' with J&J had J&J offered such a process . . . impacts the arbitrability of this claim against J&J under the Arbitration Agreement." (Doc. No. 104-1 at 13.) In the Court's view, this instruction lends further support to the ultimate finding that Plaintiff's claim against J&J is arbitrable in light of the Court's prior determination that the Employment Agreement and Arbitration Agreement should be read and enforced together. (Doc. No. 83 at 11) (finding that "the Employment Agreement and the Arbitration

---

[6] While J&J has not explicitly asserted that this determination constitutes the law of the case, J&J urges the Court to reach the same finding as to arbitrability with respect to the claim asserted against it as the Court did regarding the claims asserted against Kelly. (Doc. No. 108 at 12.) Even if the Court's prior determination were formally deemed the law of the case, none of the circumstances permitting a departure from the law of the case – such as newly available evidence, a change in the controlling law, a clear error in the prior decision, or a manifest injustice that would stem from said decision – is present here, thus providing further support for the conclusion that Plaintiff's claim against J&J falls within the scope of the Arbitration Agreement. See, e.g., In re City of Phila. Litig., 158 F.3d 711, 718 (3d Cir. 1998) (stating that the doctrine of the law of the case "preclude[s] review of only those legal issues" that a court previously decided and "recogniz[ing] that the doctrine does not preclude our reconsideration of previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice" (citing Pub. Interest Research Grp. of N.J., Inc., v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997))).

Agreement can be read to 'stand together' or 'subsist together'" and stating that "[t]he Court reads the Employment Agreement to provide that, when J&J 'is willing to make its ADR program available' to Plaintiff to 'help resolve disputes arising from' Plaintiff's assignment to J&J, Plaintiff agrees to participate in J&J's non-binding ADR program" (citing Doc. No. 76-10 at 4)). Consequently, the Court finds that Plaintiff's claim against J&J is arbitrable.[7]

### D. Whether a Stay or Dismissal Is Warranted

Having concluded that Plaintiff's remaining claim is arbitrable, the Court finds that dismissal of this action is appropriate. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The Third Circuit has explicitly stated that this provision of the FAA requires a district court to enter a stay after determining that a claim is arbitrable and upon a party's request for a stay pending the arbitration proceedings. See Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). In the instant matter, however, this Court is not required to enter a stay under the FAA, and the Court finds that dismissal of Plaintiff's complaint is appropriate. First, J&J does not appear to request a stay in accordance with this section of the FAA in its post-remand briefing. (Doc. Nos. 108, 110.) Moreover, in J&J's previously-filed brief in support of its motion to compel

---

[7] Given this conclusion, the Court need not address J&J's alternative request that this action be stayed pending arbitration proceedings between Plaintiff and Kelly. (Doc. No. at 19-20.)

16

arbitration, J&J did not request a stay, but, rather, argued that dismissal was appropriate because, in its view, all of the claims in the case were arbitrable. (Doc. No. 75 at 24); see also Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 490 (E.D. Pa. 2011) (stating that "[h]ere neither plaintiffs nor defendants have requested that we stay the action pending arbitration" and that "[w]e will accordingly dismiss plaintiff's amended complaint and close the case"). Lastly, the Court finds dismissal appropriate because there are no non-arbitrable claims remaining before the Court, in light of the Court's conclusion regarding arbitrability herein, as well as the fact that this Court previously granted Kelly's motion to compel arbitration. See H2O Res., LLC v. Oilfield Tracking Servs., LLC, No. 18-cv-1164, 2018 WL 3092365, at *13 (E.D. Pa. June 22, 2018) (citing Somerset Consulting, 832 F. Supp. 2d at 490) (dismissing the complaint and closing the case after concluding that all of the plaintiff's claims must be arbitrated and that neither the plaintiff nor any of the defendants had requested a stay pending arbitration). Accordingly, the Court will dismiss Plaintiff's complaint without prejudice and direct that this case be closed.[8]

## IV. CONCLUSION

Based on the foregoing, the Court will deem Plaintiff's claim against J&J arbitrable, dismiss Plaintiff's complaint without prejudice, and direct that this case be closed. An appropriate Order follows.

---

[8] See, e.g., H2O Res., 2018 WL 3092365, at *13 (dismissing complaint without prejudice following determination of arbitrability); Stokes v. Modis, No. 2;14-cv-06515, 2015 WL 3648958, at *3 (D.N.J. June 11, 2015) (granting motion to compel arbitration and dismissing complaint without prejudice "to allow the parties to pursue arbitration in the appropriate forum"). Additionally, the Court finds that dismissal of the entire complaint – including Plaintiff's claims against Kelly – is warranted because of this Court's previous determination that the claims against Kelly are arbitrable, as well as Plaintiff's representation to this Court following remand that "Plaintiff's arbitration proceedings with Kelly have concluded." (Doc. No. 109 at 21.)

17